The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good morning, counsel. We're on the record in consolidated cases 4-22, excuse me, 4-23-0277 and 4-23-0429. This is Dennis Sagez v. Spankey Drainage, et al. And for the appellant, could you state your name for the record, please? Yes, Alan Yow. Okay, thank you, Mr. Yow. And for the appellee? Attorney Edward Fanning. Okay, thank you, Mr. Fanning. Mr. Yow, you may proceed with your argument. Thank you, Your Honor. May it please the court, counsel, I am Alan Yow, and I represent Dennis Sagez and Sagez Farms, Inc. in this litigation. My clients seek the reversal of the trial court's award of attorney's fees and expert witness fees and subpoena damages, and also seek reversal of the trial court's granting of a directed verdict at the close of their cases. The award of the attorney's fees in this case should be reversed. The trial court awarded $59,000, 648,000. The award is not supported by the evidence submitted in this case. First, it is also contrary to law in that the American rule that Illinois courts follow is that attorney's fees and the cost of litigation are not permitted absent a contract or statute. The counterclaim filed by the drainage district did not involve a breach of a contract, nor was it brought under a statute that would allow for attorney's fees. But despite the trial court not awarding any damages, it specifically found that it was going to award attorney's fees, and it was going to award them in the nature of punitive damages. Our Supreme Court in International Union of Operating Engineers versus Lowe, previously cited to the court, indicates that while attorney's fees can be taken into account when considering punitive damages, they cannot be awarded outright or in the guise of punitive damages. If I may interrupt you, and I know you have argued the guise of attorney's fees, but what authority did the trial court have to award punitive damages at all if they declined to award any compensatory damages? Well, I'm not sure the court actually has authority to do that. Now, I believe that there are some cases out there that indicating that, assuming even perhaps nominal damage, Your Honor, the court could then award some sort of punitive damages. Here, there were no damages at all. And in fact, it can be, I think, fairly stated that the drainage district lost its case. It asserted that it had been injured and was entitled to an injunction, a mandatory injunction. It alleged that it had incurred additional pumping expenses and that a drainage tube had been damaged. Well, the court did not award injunction. The trial court did not award compensatory damages for the alleged extra pumping. Nor did it award anything for any potential damage. So what we have here is clearly an award of attorney's fees that's styled in the name of punitive damages. And our argument is that that's not proper. And, of course, as we presented in our briefs, it is also contrary to the case law talking about when punitive damages would be appropriate or the amount of punitive damages. I would also state at this point that the award of punitive damages here is also contrary to the notion that the courts are open to all. And while the trial court can fairly disagree with the plaintiff or with the defendant as to their various positions, and the trial courts obviously do that daily, okay, they are not supposed to punish someone for actually bringing a cause of action. And I believe in many ways… Counsel, isn't the punishment here intended for your client's self-help and cutting the chain and opening the valve? Isn't that really what's at the heart of the trial court's award of punitive damages? I believe so, Your Honor. And although the court also made some other findings, like raising the levy, that type of thing, which I don't believe indicated there was any evidence whatsoever that, one, it was improper to do so, second, that it actually caused the complaint of harm. Did I answer your question, Judge? Well, fair enough. But I don't think that it's fair to say that the punitive award was designed to punish you for bringing a case. It was awarded as part of the counter-defendant's case. Well, I don't want to overstate the case, Your Honor, but there is reference in the record, the comments made by the court, indicating, well, he raised his levy, he removed his pipes, but yet he went ahead and filed suit. And so to that extent, that would be, I believe, an improper way of, so in other words, that appears improper. The trial court did not find that my client's cause of action was frivolous. He did not dismiss the lawsuit, finding that it was frivolous. He just found that my client had not proven his case and was not entitled to the relief he prayed for. The trial court's award of punitive damages constitutes an abuse of discretion, as well as the amount of the award is against the manifest weight of the evidence and is unconstitutionally excessive. It bears no relationship to the alleged harm or actually the damages that were awarded. Now, Mr. Fanny will brief. Can I just clarify? Those are two different tests, right? Whether under Illinois law, there's a reasonable relationship between the punitive damages award and the conduct at issue, and then under federal constitutional law, whether the amount is so excessive as to be impermissible. Those are two different inquiries. I believe so, your honor. Although I believe in a sense, the analysis overlaps with one another, because both of them require an observation and looking into the conduct, the underlying conduct of the party and as to whether or not that conduct was either so reckless or egregious or reprehensible, as they state in the federal court cases, to justify the award. And in this particular case, yes, my client did go onto the levy in May of 2021 and open that gate valve. Opposing counsel will argue that my client acted improperly. He said he was a bully. He kind of wanted his own way. But I don't believe that's a fair reading of the record in this case. In May of 2021, my client did go to Kathy Scherz, who was a commissioner of the district, and asked for drainage relief. In other words, open the gate valve. I have acres of land that's being harmed. And there are pictures in the record taken in May of 2021 showing the standing water on his property. Now, her response to him when she testified was that, well, she said, well, no, we're not going to do that. We want the land south of the Wien levy to dry out and that he should get used to having 20 or 30 acres flooded every year. Now, my client obviously did not find that a very acceptable answer as he watched water piling up on his property. Now, if I may, historically, though, I mean, my understanding from the record, you know, he acknowledged he had allowed the pipes to fill with silt. The area historically had water on it. It was used for duck hunting. There was a blind out there and he was getting CRP payments. And it appears once those stop, now that's where these issues start to arise. So I guess as I look at the record, what makes the opposite conclusion readily apparent when the trial court should have found that the district breached its duty to your client? In the context of punitive damages, Your Honor, or just the duty itself? Just the duty itself. Okay. Well, I believe a couple of things. One, the, that pipe was put in with the permission of the drainage district. Back in 1998. And the commissioners at that time, one of which, well, a couple of them are related to the current commissioners. All right. Accepted it. And made indications that they did not believe. That there'd be flooding or cause it would, in other words, having it there with a flat gate on was not going to cause additional damage. All right. Didn't he have. Drainage through the, the pipes. On his private levy. That made less of an issue of drainage that might come through the wing of the private levy. Yes. Now. My client purchased the property around 2009, something like that. Your honor. And so he has no personal knowledge as to what occurred, but yes. There were two tubes in the private levy. What we call the North and South too. Yeah. Circumstances are correct. In other words, when the cold creep is low. In water could go through those tubes. With the idea that the excess. Water. Cold creep was high. We'd go through the tube in the wing. Through the flat gate. And I guess our belief here is that one. The commissioners have a statutory duty. To maintain and operate. The works of the district. We believe that by not working with my client, providing him with some sort of relief. Back at that time. That was a violation of their duty. And they intentionally knew. That by. They knew that by keeping that. Now close. That that was going to have a tumor. Water is going to accumulate. And flood my client's property. Thank you. Mr. Young. Could I ask a question in that regard? The amount of water that was on your client's ground in may of 2021. That he was attempting to get rid of by way of opening the gate valve. That same. In years past. Prior to the. The. Changing of the valve from a flap valve to a gate valve. Would that water have drained through the flap valve? Would the entire farmland have been drained? No, I don't. That was not, I believe the way. They envisioned it. Once again. Lack of personal knowledge. My client going back that far. The idea would be the land that water on his property. Rain. Would go through the two private tubes. And then in a sense, any excess. If it couldn't be pumped out because cold creek was high. Within go through that flap gate. So I believe that yes, if there was enough pressure there. Water. Wasn't going through the other two tubes. It was then to go through that. Wing Levy. And then to the pump house. So that the entirety of the farm ground would be drained. Well, I don't believe that that was. In a sense, the intent. When it was constructed in 98. In other words. The two tubes and the private levy. My understanding were there. Before. 1998. When the wing levy tube was put in. I'm not necessarily talking about intent. I'm just in terms of practical effect. During flooding events. Prior to the changing of the. The wing dam. Or the wing levy. I'm sorry.  I'm trying to think. About being changed from a flap valve to a gate valve. Was that farm ground ever entirely. Drained by way of that operation. Not here. Not yet. The tubes and the private tube. We're operating. Okay. Okay. So with regards to. My client's conduct. And opening the gate valve in may of 2021. While perhaps not the best course of action. It was not done for an evil motive. He was not attempting to inflict any harm on anyone. He was trying to help. His farm operation. That was. Going underwater. And with attempts to work with the drainage district. Had not proven itself. Once again, perhaps not. Recommended conduct your honor, but that's what he was left with. I don't know. But wasn't it with. Without regard and total disregard. While he had assumptions of what he may have thought would be permissible. I mean, he did this without regard to other landowners that might be. Impacted by his actions. Well, I don't believe so. Your honor. He testified. That before he opened that gate valve. He looked at. The. Drainage ditch. And that's where the water went. It's important to real. To realize that. There was no evidence in the record. That his conduct in any way. Flooded any land. The water involved. Went into a ditch. And that ditch leads to the pump house. That's its purpose. And. He opened that valve. And that's what we get from the records. Okay. He no longer had his pipes installed. Correct. That's correct. So he had removed his primary source of drainage. And the. The gate valve or the flat valve that was installed in the. Wing levy. That was always intended as a secondary source of drainage for him to benefit him. Correct. That's what we get from the record. The records indicate that. That water is to go through the wing levy. When the other. Could not operate because of. So once he removes the pipes and then opens the gate valve at that point. He is. At least from a practical matter. Discharging into that ditch. And that's what we get from the record. So he was far more than was ever anticipated to be drained from his property through the gate. I believe that. That's correct. Thank you. And one of the important things to realize here, or at least like to emphasize. Is. What harm has actually been demonstrated by the district. That actually justifies. The imposition of punitive damage. Much less the size of the award. As previously indicated, the trial court did not grant any. Relief for the district. The only release relief. The district. Was I was going to award the attorney's fees. I submit to the court that. Even if the court finds that. My client's conduct. You know, was not the best. His conduct was not so reprehensible. Or so egregious to warrant. Attorney's fees. We also have to keep in mind what we're. What we're talking about the harm here. The harm here. Is that my client. Did not physically assault anyone. He did not commit a fraud on the elderly. You know, no sexual harassment. Unless. In other words. In many of the cases you see those types of that type of conduct. And so. Evidence is a. True disregard for health and safety of others. When there's intentional trespass. Isn't that right? Excuse me, your honor. When there is an intentional trespass. Isn't that right? I believe that. That nominal damages. Presumed or awarded. On that. But once again, the trial court. Did not. Punitives are available when there is an intentional trespass. Is that true? I believe they can be. Once again, it depends on the circumstances. Your honor. Not every trespass. I think would rise to the level of the imposition of. Of attorney's fees here are punitive damages. In that regard. As far as some of the factors that we look at. We have to look at, well, what's the harm here? Is it economic? Is it personal? All right. Here. It was alleged economic. The district. You know, did not cease operation. As a result of this. One of the findings by the trial court. Was that. My client owns land. In another drainage district. No witness. Testified to that. But I'm aware of when I looked at the record, there is no witness. That says this. It might've been a reference by. Opposing counsel during an argument. I'm not sure where it came from. But I don't find that in the record. And so when the court says this is needed to punish. For his conduct. Because he has land in another drainage district. I'm not sure where that finding. Where's the support for that? There certainly was no evidence. Council may interrupt though. With regards to his private. Pipes. Does that not drain into a different drainage district? It drank. Part of the. Elder drainage district, but you're right. The elder drainage district is west of his private levy. And they're the ones that control. And so. That's correct. That's correct. And so. As far as the award itself, as far as the amount. Okay. So. The courts and I've cited the. The locates again. Supreme court case. Where the court held that few awards exceeding a single. Digit ratio between punitive damages and compensatory. We'll satisfy due process. Here are your honors. Once again, there's really. Once again, there was no award of any. Of any damages here. Okay. But assuming. $10. Nominal damages or damages. That would equate to a ratio of 5,000. 964. Point eight, four. That. Does not comport. We believe. Okay. With the due process clause of the 14th amendment. And it certainly is not supported by the manifest way to the evidence. In this case. Even if we find. Even if you were to find that the trial court is correct. Mr. Mr. He acted recklessly. All right. He acted egregiously. We don't believe that, but the court. May find the trial court did not err in doing that. What is the relationship between the award? And the harm that he caused. There is not. This. Amount that awarded just. Not in any way. In relationship to the harm. That was proven. So we believe that. And we're requesting that the court. Vacate that award.  Vacate that award. And reverse it. Or. It can exercise its authority under rule three, six, six. And modify that to comport with. The manifest way to the evidence and the due process clause. All right, Mr. Yao, you're out of time at this point. You'll have time and rebuttal. Mr. Fanning. You may proceed. May it please the court. Counsel. Attorney Edward Fanning on behalf of spanky drainage and levy district. The defendant. Slash counter plaintiff in this particular case. I'd like to address his arguments as he has presented those to the court. When we first talk about the punitive damages aspect. He argues that there was no damages. Well, that's not what the court found. The court found that there actually was damages and said, made it in its ruling. That the defendant in this case, counter plaintiff did suffer damages. The problem that the court had was. In ascertaining the court felt like depending since we couldn't ascertain what water they would have normally pumped out from within their district, because the water just mixes with itself. We were not able to give a specific volumes that would be assigned to the trespass. Or the conduct of the plaintiff, Mr. Sanjay in this particular case. How would the volume of water. Correlate to damages. Water flowing. Presumably is not a damage to anything. It might quantify the extent of the trespass, but what would calculating the amount of water. Tell us about damages. Because the pumps of the drainage district would have to run. For a certain amount of time. And they would have to run. Extra hours for that volume. That came off of Mr. Sanjay's property when those gate valves were unlawfully opened. So that increased the volume or the flow of that. Now, because the district has so many hundreds of acres contained within this district. In within that levy. They would have that water would normally. Only be drained out through the district. Now. And it's key to understand how this, this gate valve. And even. And then the evidence shows that the gate valve was never to be used in normal conditions. So. Before you get to that. Let's just go back to the starting point where you were saying that, you know, it's not really accurate that the court. Didn't find that there were damages. And that there were no compensatory damages. Isn't it. A fact though, that the court did not make an award of compensatory damages. That's correct. Although. The defendant in this particular case disagrees with the court. Because we believe that we did give him sufficient evidence. Irregardless. His ruling was that he did not believe. That he could come up with a dollar amount because of. The two speculative nature. Of the evidence in calculating or coming up with an actual dollar figure. That he felt comfortable with in awarding a particular amount. Now, whether he should have awarded still a dollar or $10. He did find that there was damages. But he just could not put an ascertainable figure according to his opinion. What that, that amount would have been. What amount did you ask for? I think it was a little over $7,000. I didn't have that. Figure as far as based on the hours. And we had given him the formula based upon the testimony of mr. Jewel, as far as the hours. That we believed were ascertainable to the pumping. Of mr. Saturday's water that was redirected into their district. In addition to that. You. There's when you run a car, there's not a cost. Effective just from running the gasoline. Or the oil, or you have to tire wear engine wear and such as those things. So we've used a calculation that has been used to ascertain damages. Of individuals that's been recognized by the federal government, which is the FEMA rates. And we presented those FEMA rates. Through the testimony of Kathy shears of what those. Would have been on an hourly rate for that particular pump. To give him the cost effectiveness of that hourly pump running. And we gave him then what the cost that the. Person. Testified to as how many additional hours he believed. Was caused to the district from that. In addition to that. We did present evidence. At a bare minimum. What mr. Jewel was getting paid in an hourly rate. To maintain and monitor those pumps while they were running. So if nothing else, the court could have. Or should have found damages in reference to. His hourly rate and the extra hours that was spent on. Having him man those pumps now. There's no cross appeal on this. Correct. That's correct. We did not. Cost effectively. We did not do a cross appeal. Based on the damages. That we alleged in that. So that is not an issue for. Before the court properly on our part. So going back to the fact that there was no award for compensatory damages. Isn't the law clear that in the absence of an award for compensatory damages, there can be no award for punitive damages. I think that you can, because especially there is an intentional trespass here. And it may be nominal in nature, but the court did. Find that there was damages. So, I mean, it's not. That the court found that there was no damages. The court found that there was damages that he just could not ascertain what that put a dollar figure to it. So I don't. And as such, because of that. Isn't another way to say that is that you. Failed to prove a basis to compute your damages. Which is your obligation. That's correct. I think that's exactly what the court did. Said that we did not present sufficient evidence that, that he could believe there was a dollar figure to that. Now, so following up with that, then back to justice Harris's question. Since there is no award of compensatory damages. Then isn't the rule that punitive damages may not be awarded. I don't know if that's the case. I disagree with that. I believe that he can award. Because of the intentional conduct, Especially like since this was a trespass case. Where the conduct of the parties was intentional. I mean, too. Because the purpose of the punitive damages is to stop the. The unlawful conduct of a particular person. Which the court might find be willful, egregious. And such as that, which he has found in this particular case. So say an individual is just constantly walking on another individual's property without their permission. There may not be any damages, but in order to stop that. And to deter that defendant from doing that unlawful activity, I think punitive damages would be awarded in a continued repeated. Trespass by a particular person, although that person may not be causing that individual harm. He is impacting on their rights as to having exclusive possession of their property. In that particular case. And so I think punitive damages would be warranted. I think justice Leonard's question arises in justice Harris's question arises from Illinois law. Let's look at the. Constitutional. Analysis. Where I think this. Supreme court has said, one of the things we look at. Is how. How big of a ratio there is between. Punitive and compensatory. And they've suggested. Three to one, you're good. That's very traditional. You get into the high single digits. You're probably still. Okay. But you get into 10 times as much. You may be out on a limb constitutionally. How are we supposed to even analyze that? When there's no denominator. It's a factor that the court would use, but it's not an exclusive thing. There's no set formula saying, okay, well, once we get past this ratio that we're talking about, The problem is when you're dealing with such nominal amounts. Or did not particularly. Make a fine. Of damages. The ratios get skewed. Now. So that's why I don't think that that's necessarily in these particular facts and circumstances that analysis would be appropriate. Based on its ratio. Because when you have zero zero times. A thousand is still zero. And that's the, the difficulties of using that total analogy here. But if you look at the perspective of the punitive damages. When you're talking about the constitutionality, it just cannot be so overly whelming or, or overly burdensome. Particularly onto a particular. Would this place to be the counter defendants that it doesn't warrant such a high award. Here it's not such a high award. I mean, there's no additional punitive damages other than the court's consideration of the attorney's fees and the expert fees involved. There was no extra money imposed. Even if you had an attorney's fee provision. That applied to your claim. You wouldn't be entitled to get your fees. For defending against the plaintiff's claim. And what the trial court did here was effectively give you all of your fees. Regardless of whether it was in furtherance of your claim, which relates to the wrongful conduct. Or your dispute with the plaintiff about the legal issues. That seems to be a bridge too far. If you can be, but the court did not give any attorney's fees. In a, as a punitive nature, other than in the form of. The attorney's fees. The court did not give any additional punitive damages. That's consideration for the attorney's fees. So we don't know if, if, if his punishment was considered to be for that amount. For other factors. Cause the court could have went beyond the attorney's fees. He wouldn't be just limited by saying the attorney's fees. It's down to the penny. Isn't it. It is. Everything is down to the pinning is specific. He didn't give. We had asked for specific punitive damages in the amount. Of $7,000. Equal to the damages that we had claimed. He did not give any additional punitive damages for consideration of that. And he could have done that based upon the person's conduct. Go back. You were claiming damages of 7,000. So you were asking for punitives of seven. Correct. In the, in the, in the closing. I'm sorry. He gave you 59. And he gave us 59. Correct. Yes, that is correct. And I think that'll be detailed. In the closing in the record, as far as the closing argument. As far as the amount of relief that we calculated and then our request for punitive damages. In that amount that was requested in that particular aspect there. Now, again, we, I think we can see that attorney's fees contractually statutorily. That is not appropriate. And other than the fact that what is the reason why. It's a punitive damage award is what the court did. The court made that punitive damages equal to the attorney's fees and the expert fees. Now, and the reason for that, it wasn't just like, okay, well,  You know, it was the conduct of the plaintiff in this particular case, as far as what he did to the defendant's property, how he maintained his property, which was contrary to the natural drainage. Or the customary drainage that has been recognized by the parties. So. You know, the that's why the court. Found that there was such a punitive nature as is egregious conduct. It was repeated. So, you know, the, the court, the court dealt with the case in a similar fashion. Despite being given notice multiple occasions. Not to be opening up the gate valve. In fact, they took extra measures. So it could chain and locked it. And at least according to. Mr. Jewel that at least three times that, that had been, had to be replaced. Because to stop that flow of water coming through there. Now, the other thing too, that's egregious is. He builds this levy higher than its original design. The original design when it was put in there was to, to allow excess water to even flow over this levy. Now by him, by him, increasing the levy that stopped that. Immediate overflow into that into cold Creek. Now, and then also. Obviously failing to maintain those pipes that he has, which would normally take that into cold Creek. His failure to when he actually removed those pipes out of the situation.    And so that's a major concern. Then. Also the issue of the problem here was. It wasn't necessarily a breach or anything, a part of the faking drains and levy district. The issue was. The failure to maintain. It was the main issue here, and that was it? That was under the purview of the elder. Of the drainage and levy district as well as the plaintiff in this particular case to maintain his own ditch. Now, in addition to that, they let these pipes silt in. They didn't maintain their own flat valves. And basically. Even when the. Spanky drains and levy district informed him that they were not going to find that this type of drainage acceptable, and they were not going to allow the. The normal flow go through their district. He disregarded that. And took all these actions into his own hands. And even when they tried to stop him and by locking the gate valve from allowing him to force it, he took his actions into his own hands. And, and the court did find that they, he believed that a punishment was necessary to instill upon the planet from this particular case, not to participate in this such a type of egregious conduct. So. And although we disagree with the court's finding that the court should have made a finding of, of damages. He did not say that there was not any particular damages. That were incurred by the defendant in this particular case. The now again, the constitutionality of that aspect is. It has to rise to such a level that. The court would say that basically it's an unlawful deprivation of a particular party's assets without that representation to them. Now, if you look at the court's ruling, he only gave the attorney's fees. Where is the profit? Or where is the extra monies that are made by the, the defendant Spanky drains and levy district in this particular case? Where is that money? They didn't get any monies for extra pumping. They didn't get any windfall off of the situation. So there's no excess. That is granted in their windfall that they got. Attorney's fees that they weren't contractually or statutorily entitled to. And this is still the only reason they're getting it because it's characterized as punitive. Well, punitive damages because of their nature become a windfall or can be characterized because of that Nate of that aspect. Sure. But it's not such that it places them into a particular position. Above and beyond what they would have been, had it not been for the egregious conduct of the plaintiff in this particular case. And so. And that's the, the, the language in the, the. He saw their assessors. Is it so excessively that it would not be contemplated or go beyond what the current situation warranted. Again, we're not talking hundreds of thousands of dollars here. We're not such that it's depriving him of his property, forcing him to sell his land out of the district. It's only. The amount that of the cost of the litigation in essence. But again, the drainage district is not put back their monies that they've suffered from the loss of this excess pumping or repairing their pipes. The, the, the locks and such as that, as well as their lost labor and such. None of those things go above and far beyond that. Now, again, there is a cost of the attorney's fees that's considered, but it's not such a windfall that becomes so overly burdensome on the part of the plaintiff in this particular case, burdensome to him. Now, as far as the evidence going back to the court's ruling, as far as finding a directed finding, I'd like to address that before I lose total time is that the evidence was overly whelming. And this evidence was very strong by the plaintiff himself, admitting that he did not maintain his pipes. He allowed them to sit Silton. He did not do anything to work on cold Creek to fix the drainage there. He acknowledged that cold Creek was the responsibility of the elderly drains and district and not the defendant in this particular case. He acknowledged that his, the issue, the main issue was cold Creek and this water going through there. And that, and the maintenance of these pipes. So first he refute, then he, he takes them out. And then he also raises the levies, which the evidence shows in the letters to the core of engineers, that it was not intended to be designed to be at that height. And the letters from the district informed Mr. Sajay that that was not acceptable, but he could do what he chose to do, but they did not find that the drainage that he needed to maintain his pipes and allow the normal flow to go through. Has it, as it always has been. Has that now been remedied by the installation of new pipes and raising of the levy? Twofold. No, it has not. The, the raising of the levy is still contrary to the original design because there's supposed to be an it's supposed to be like an overflow where it goes over his levy based on that height. And that was stated to the core of engineers that that was part of that effect because they want, they were concerned about how much volume would this pipe was going to be taking when it was installed into the drainage districts aspect. The other reason why it's not been resolved is because, and it goes to what the plaintiff's concern is, is that cold Creek is still not fixed. So what they did is engineer testified to that. In essence, if they would put the pipes into the original elevation because of cold Creek's failure being dug out would make them ineffective. So he admitted that they were at least installed six inches higher than what they were normally been placed at before their original removal. So that still is not the normal flow, at least to the extent of the six inches of water that's not going to be allowed to flow through those drainage pipes into cold Creek. So it's still not been totally remedied. Has it been assistance? Yes. And again, it was not done until well into this litigation that he did put attempted at least restore some of the normal flow in that situation. And the court specifically noted that in its ruling to going forward, would you agree that the district does have a duty to repair statutory duty to repair and operate its drainage system to benefit all the landowners, including the one with whom we've had this issue? Correct. And we've always, we're not going to get the next case that says it, you know, you just have kind of shut him off from services. That's correct. And, and that we don't, we I'm not correct that we're not shutting him off because there's always been a duty and obligation. We've received his tax dollars. He's been paying that, but it, but those, but that drainage must be based upon the original design and consideration when it was installed. And it's not supposed to be a day-to-day drainage. It's see, the problem is, is that for this landowner, is that when the LRA river gets up to a certain level, it backs into McCoupin Creek and it backs into cold Creek. So they have these sluice valves back at the end of cold Creek to stop that from coming in to protect his property. The problem in that point is when the river or cold Creek gets inundated, it's so high that he will, he doesn't, in essence, have no drainage if they set them sluice valves. So we created an alternative in those particular cases, like Mr. Yao had said, when cold Creek is not flowing can't flow because of certain factors in those rare flooding circumstances, then, then this creates an alternative that they could regulate and still give him some relief from that water there. But the other thing too, is he's got to, also, he's got to maintain his flat valves to keep that water from coming back in from cold Creek into his property, because if we shut down cold Creek where it can't go into it, then his drainage just in his district or his little area there, where they call watershed, then his can't go to cold Creek, but cold Creek can't get into his, then we create just his watershed through the district, but it's in those rare and very limited circumstances as detailed to the core as it was. You're out of time. Let you go a little bit beyond your time. Thank you. Roboto argument. Yes, your honor. Thank you. One thing I did want to point out that contrary to what's been argued, the evidence in the record is not that my client didn't attempt to work on his two private tubes or to work in cold Creek. He attempted to do that, but those attempts eventually just failed. Your honor. Now with regards to, once again, back to the punitive damages, one, the punitive damages that were awarded were pursuant to a counter claim in this case. We were the ones that brought to seeking relief. They counter your honor. And I believe the counter claim wasn't filed until approximately six months or so after the litigation had been pending. So clearly I believe from the, the record submitted in the, in the, by council, the attorney's fees that were awarded would have included a time that was spent just defending the case as opposed to just simply trying to prove their, their counter claim. Now, as I pointed out in our reply brief, there is several references and council made them to the fact that my client did raise his levy with the, with the permission of our partner natural resources. So he lawfully did that, but there's no indication that by doing that the district was harmed. There's no evidence that the district was harmed as a result of that, nor did his failure to maintain his levy or maintain the tubes were actually a causation. Remember the, the causation here is him opening up the gate valve, your honor. Now, one thing that I, that I would like to point out is that we are still seeking or asking the court to reverse the granting of the directed verdict. Our client has installed two new tubes and he testified that he put them in Mr. Martindale, his expert, that he put them in a, in a way that they would have the same or more capacity to remove the tubes. Now the tubes are six inches higher than the South tube, the original South tube. But as the trial court even found that that particular amount of water would be de minimis the record before you I believe makes it very clear that despite what counsel says, his client have no intention of ever permitting any water to go through that tube. And, um, we believe that we met the burden of proof of a prima facie case and tiling us to a judgment, a, uh, a injunction your honor honors regarding this. We are asking that the court remanded back with instruction. We believe that the trial court in its discretion, uh, can fashion a remedy here that provides benefit, drainage benefits to my client for which he paid. He's in the district. They, they allow the annexation of the property. They allow the installation of that wing tube. It, it, it really defies belief that the people that pushed this at that time, which included, uh, Matthew Scherz's brother who farmed the land and Mr. Lake, who was also a commissioner. He owned the land. It defies belief that the commissioners now can totally withhold any drainage benefits for my client. That is patently unfair. It violates their duty. And they testify that pumping water is a primary obligation of the commissioners. All landowners are entitled to benefits for which they pay. And my client is not going to receive any benefits unless the court grants them an injunction requiring the drainage district to fulfill its duty. Absent that my client is not going to have that benefit of that pipe and the wing lane. For these reasons and others that we argued, your honors, um, we would request the trial courts, uh, judgments and finding of the directed verdict to be reversed. Okay. Thank you, Mr. Yow. Thank you, Mr. Fanning. The cases will be taken under advisement and a written decision will be issued.